**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NFL PROPERTIES LLC,

                  Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                  Defendants.

Case No. 21-cv-05747

## COMPLAINT

Plaintiff NFL Properties LLC ("NFLP" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold and continue to sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.    This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of one or more of the trademarks owned by Plaintiff (the "Counterfeit NFL Products"). Plaintiff is a member of the Coalition to Advance the Protection of Sports logos ("CAPS"), which is administered by Trademark Management LLC ("TML"). In collaboration with CAPS, Plaintiff has established a comprehensive program of trademark protection and enforcement. In particular, CAPS has created an extensive anti-counterfeiting program for Plaintiff, which includes regularly investigating suspicious e-commerce stores and enforcing Plaintiff's trademark rights to prevent the sale of Counterfeit NFL Products.

4.    Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit NFL Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and demonstrating that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions

2

or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operations. Plaintiff is forced to file these actions to combat Defendants' counterfeiting of the trademarks owned by Plaintiff, as well as to protect unknowing consumers from purchasing Counterfeit NFL Products over the Internet. Plaintiff has been irreparably harmed and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**NFL Properties LLC**

5.        NFLP is a Delaware limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 345 Park Avenue, New York, New York. NFLP is the authorized representative of the National Football League ("NFL") and its thirty-two (32) member clubs, including the Chicago Bears (the "Member Clubs"), for the licensing and protection of their names, logos, symbols, and other identifying marks and indicia. The NFL is an unincorporated association of the Member Clubs, each of which owns and operates a professional football team engaged in providing entertainment services to the public in the form of competitive professional football games.

6.        The NFL and its Member Clubs have adopted and used in commerce certain trademarks, logos, symbols, and other identifying indicia relating to the activities of the NFL and the Member Clubs. The NFL and its Member Clubs have also adopted and used in commerce throughout the United States, including Illinois, certain trademarks relating to the activities of the NFL and its Member Clubs (referred to herein collectively as the "NFL Trademarks"). The NFL

has registered a number of its marks with the United States Patent and Trademark Office,

including NATIONAL FOOTBALL LEAGUE, NFL, and the NFL Shield logo:           .  A

non-exhaustive list of the famous and distinctive NFL Trademarks owned by NFLP, registered

before the United States Patent and Trademark Office, and currently in use in commerce includes

the following:

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,076,139 | NATIONAL FOOTBALL LEAGUE | For:  promoting the interests of member football clubs, scheduling games, and promoting interest in football in class 041. |
| 2,919,270 | NFL | For: toys and sporting goods, namely, plush toys, stuffed animals, play figures, golf balls, golf bags, golf clubs, golf club covers, bowling balls, bowling bags, footballs, toy banks, hand held unit for playing electronic games; hand held unit for playing video games; board games relating to football, checker sets, chess sets, dominoes, Christmas tree ornaments, balloons, jigsaw puzzles, windsocks, kites, toy trucks, football shoulder pads, elbow, hand and knee pads, all for athletic use; billiard game playing equipment, exercise equipment, namely, chest protectors for sports, dart boards and dart board cases, volleyball equipment, namely, volleyballs fishing equipment, namely, fishing lures and fishing rods, handle grips for sporting equipment, athletic equipment, namely, personal floor mats, mouth guards, athletic sports wraps and athletic tape, snow sleds for recreation use, swim boards for recreation use, toy vehicles, toy model train sets, yo-yos in class 028. |
| 3,394,343 | NFL | For: Football helmets, cell phone covers, magnetic coded charge cards, decorative magnets, prerecorded DVDs featuring the sport of football, computer game software and disks, computer mouse pads, sunglasses in class 009. |

| | | |
|---|---|---|
| | | For: Jewelry, pins, bracelets, charms, rings, collectible coins, commemorative coins, coins of precious metal, pendants and key chains made of precious metal in class 014.

For: Posters, calendars, trading cards, series of books relating to football, notepads, stickers, printed tickets to sports games and events; note paper, pictorial prints, picture postcards, art pictures, paper gift bags, paper decorations; collectible cards; collectible card and memorabilia holders; souvenir programs for sports events in class 016.

For: Men's, women's and children's clothing, namely, fleece tops and bottoms, headwear, caps, knit hats, t-shirts, shirts, turtlenecks, sweatshirts, shorts, tank tops, pants, jackets, golf shirts, knit shirts, jerseys, gloves, ties, cloth bibs; night shirts and pajamas; underwear, socks; towels in class 025.

For: Television broadcasting services; television transmission services; cable television broadcasting; radio broadcasting; broadcasting programming on the Internet; information transmission via electronic communications networks; transmission of information through video communication systems; communication services, namely, audio and video broadcasting; broadcasting services and provision of telecommunication access to video and audio content provided via a video on demand; streaming of audio material on the Internet; streaming of video material and podcasts on the Internet; electronic delivery of images and photos via a global computer network; providing multiple-user access to a global computer information network for the purpose of participating in interactive polling in the field of football; wireless communications services, namely, transmission of text, graphics, data, and entertainment information to mobile phones; mobile media and entertainment services in the nature of electronic transmission of entertainment media content in class 038.

For: Education and entertainment services in the nature of professional football games and exhibitions; providing sports and entertainment |

| | | |
|---|---|---|
| | | information via a global computer network or a commercial on-line computer service or by cable, satellite, television and radio; arranging and conducting athletic competitions, namely, professional football games and exhibitions; football fan club services; entertainment services, namely, musical and dance performances provided during intervals at sports events; educational services, namely, physical education programs; production of radio and television programs; live shows featuring football games, exhibitions, competitions, and musical and dance performances; sporting and cultural activities; distribution of television programming to cable and satellite television systems; distribution of television programs for others in class 041. |
| 3,581,281 | | For: Football helmets, cell phone covers, magnetic coded charge cards, decorative magnets, prerecorded compact discs, and DVDs featuring the sport of football, computer game software and disks, computer mouse pads, sunglasses, eyeglass cases, and CD storage cases in class 009.<br><br>For: Jewelry, clocks, pins, bracelets, necklaces, charms, rings, collectible coins, commemorative coins, non-monetary coins of precious metal, pendants and key chains made of precious metal in class 014.<br><br>For: Posters, calendars, trading cards, a series of books in the field of football, magazines in the field of football, notepads, stickers, bumper stickers, and greeting cards; printed tickets to sports games and events; note paper, pictorial prints, picture postcards, art pictures, stationery, stationery-type portfolios, wrapping paper, paper table cloths, paper napkins, paper gift bags, paper party decorations; printed collectible cards; collectible card and memorabilia holders; souvenir programs for sports events in class 016.<br><br>For: Towels in class 024.<br><br>For: Clothing, namely, fleece tops and bottoms, headwear, caps, knit hats, t-shirts, shirts, turtlenecks, |

| | | |
|---|---|---|
| | | sweatshirts, shorts, tank tops, sweaters, pants, jackets, golf shirts, knit shirts, jerseys, wristbands, warm up suits, gloves, ties, cloth bibs; sleepwear, namely, bathrobes, and pajamas; underwear, socks; footwear; sneakers in class 025.<br><br>For: Toys and sporting goods, namely, plush toys, stuffed animals, play figures, golf balls, golf bags, golf club covers, footballs, toy banks, board games relating to football, playing cards, Christmas tree ornaments, balloons, jigsaw puzzles, toy, toy cars and trucks, billiard balls, dart boards, playing cards, miniature helmets in class 028.<br><br>For: Association services, namely, promoting the interests of professional football clubs; promoting the interests of member football clubs; scheduling games for member teams; promoting public interest in football; association services, namely, providing a forum for member football clubs to showcase, display, demonstrate and promote ideas, products, and services in connection with football; promotion of sporting and cultural activities in class 035.<br><br>For Education and entertainment services in the nature of professional football games and exhibitions; providing sports and entertainment information via a global computer network or a commercial on-line computer service, or by cable, satellite, television or radio; arranging and conducting athletic competitions, namely, professional football games and exhibitions; football fan club services, namely, personal appearances by a costumed mascot for professional football teams; entertainment services, namely, live musical and dance performances provided during intervals at sports events; educational services, namely, conducting physical education programs; production of radio and television programs; presentation of live shows featuring football games, exhibitions, competitions, and musical and dance performances; organization of sporting and cultural activities; entertainment services, namely, an on-going series featuring football provided through cable television, satellite television, and television and radio broadcasts in class 041. |

| | | |
|---|---|---|
| 3,286,411 |  | For: Luggage, shoulder bags, beach bags, duffle bags, all purpose sports bags, sports equipment bags, school bags, tote bags, knapsacks, rucksacks, wallets, umbrellas, waist packs, leather key fobs, luggage tags in class 018.<br><br>For: Textile goods, namely, cloth flags, curtains, quilts, towels, sheets, pillowcases, comforters, blankets, pillow shams, textile fabric for the manufacture of clothing, oven mitts, shower curtains, pot holders, textile wall hangings, fabric throws in class 024.<br><br>For: Marketing services, namely, promoting the goods and services of others by arranging for sponsors to affiliate their goods and services with various football personalities and/or the sport of football; dissemination of advertising for others via an on-line electronic communications network; promoting the sale of credit card accounts through the administration of incentive award programs; direct mail advertising for others in class 035. |
| 3,661,464 |  | For: Handbags, luggage, shoulder bags, beach bags, duffle bags, clutch bags, all purpose sport bags, bags for sports, school bags, tote bags, knapsacks, wallets, travel bags, backpacks, umbrellas and luggage tags in class 018. |
| 2,954,420 | SUPER BOWL | For: men's, women's and children's clothing, namely, fleece tops and bottoms, caps, headwear, T-shirts, sweatshirts, shorts, tank tops, sweaters, pants, jackets, turtlenecks, golf shirts, knit shirts, jerseys, wind resistant jackets, cloth bibs, sleepwear, namely, night shirts and pajamas, knit hats and caps, and scarves in class 025. |
| 3,138,590 | SUPER BOWL | For: Football helmets, cell phone covers, decorative magnets, prerecorded DVDs all featuring the sport of football, computer mouse pads in class 009.<br><br>For: Jewelry, watches, clocks, pins, earrings, necklaces, bracelets, belt buckles made primarily of precious metals, charms, money clips made primarily of precious metals, rings, collectible coins, |

| | | |
|---|---|---|
| | | commemorative coins in class 014.<br><br>For: Posters, trading cards, series of books relating to football, magazines relating to football, notepads, stickers, bumper stickers, printed tickets to sports games and events; pens note paper, pictorial prints, art pictures, paper table cloths, paper party invitations, paper decorations, collectible cards; collectible card and memorabilia holders, souvenir programs for sports events in class 016.<br><br>For: Toys and sporting goods, namely, plush toys, stuffed animals, play figures, golf balls, footballs, Christmas tree ornaments, balloons, jigsaw puzzles, miniature helmets in class 028. |
| 2,941,347 |  | For: men's, women's and children's clothing, namely, fleece tops, caps, headwear, T-shirts, sweatshirts, jackets, jerseys, wind resistant jackets, knit hats and caps in class 025. |
| 3,138,589 |  | For: Football helmets, decorative magnets, and DVDs featuring the sport of football, computer game software in class 009.<br><br>For: Jewelry, pins, collectible coins, commemorative coins in class 014.<br><br>For: trading cards, series of books relating to football, collectible cards; collectible card and memorabilia holders, souvenir programs for sports events in class 016.<br><br>For: footballs, Christmas tree ornaments in class 028. |

The above U.S. registrations for the NFL Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the Federal Trademark Registrations for the above NFL Trademarks are attached hereto as **Exhibit 1**.

7.      NFL Trademarks are among the most renowned and immediately recognizable marks in professional sports today.  NFL professional football and NFL Trademarks are widely known to and enormously popular with both sports fans and the general public.  NFLP has promoted and advertised the NFL, the Member Clubs and NFL Trademarks extensively for many years.  As a result of substantial advertising, promotion and media attention, and NFLP's extensive licensing and sponsorship program for a wide variety of goods and services, NFL Trademarks have acquired fame and secondary meaning, and represent significant goodwill of great value to NFLP, the NFL and the Member Clubs.

8.      Hundreds of millions of fans have attended NFL games and related events, enjoyed television and radio broadcasts of NFL games and related events, and purchased merchandise bearing NFL Trademarks to identify with their favorite Member Clubs.  Millions visit <nflshop.com>, the official NFL Internet web store, as well as the official websites of the individual Member Clubs, which prominently display, and in many cases are accessed by domain names containing, NFL Trademarks.

9.      A significant aspect of NFLP's business and resulting revenues has been for many years, and continues to be, the merchandising and licensing of NFL Trademarks.  NFLP has entered into numerous licensing agreements in the United States and around the world, authorizing use of NFL Trademarks on a variety of products, including apparel, caps, jewelry, toys, furniture, pennants, and bags, among others (collectively, "NFL Products").  NFLP generates significant and substantial revenue each year from its sales and licensing of the sale of the NFL Products.

10. NFLP, directly and through authorized licensees, has established and maintained high standards of quality for NFL Products, and continues to maintain stringent quality control over licensees and other authorized users of NFL Trademarks.

11. In supervising licensees, NFLP provides licensees and licensed product manufacturers with specifications setting forth extensive details with respect to use of NFL Trademarks, including typeface and typography, color renderings, official uniform scripts, graphic designs, materials, workmanship, and quality. All NFL Products are reviewed under these strict quality control procedures.

12. As a result of the extensive use of NFL Trademarks, not only in connection with the NFL's well-known football games and related events, but also in connection with a wide variety of licensed merchandise promoted, sold and/or rendered in the United States and abroad, as well as widespread use in connection with a broad array of sponsorship activities spanning diverse industries, the NFL Trademarks have for many decades, and long prior to any use made by Defendants, functioned as unique identifiers and synonyms in the public mind for NFLP, the NFL, and the Member Clubs. As a result, NFL Trademarks are famous and possess significant goodwill of great value to NFLP, the NFL, and the Member Clubs.

13. To protect NFL Trademarks from infringement, dilution, disparagement, and misappropriation, NFLP has established a comprehensive program of trademark protection, including regularly investigating suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers, both in collaboration with CAPS and as part of its independent trademark protection efforts.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The fame of the NFL Trademarks and the success of Plaintiff's athletic brand and affiliated variety of products, including apparel, caps, jewelry, toys, furniture, pennants, and bags, among others (collectively, "Genuine NFL Products"), has resulted in significant counterfeiting of NFL Trademarks. TML administers CAPS on behalf of its members, including Plaintiff NFLP. CAPS has created an extensive anti-counterfeiting program, which includes regularly investigating suspicious e-commerce stores identified in proactive Internet sweeps and reported by a variety of informants in response to the significant counterfeiting of NFL Trademarks. In recent years, CAPS, on behalf of its members, has identified numerous fully interactive e-commerce stores including those operating under the Seller Aliases, which are

offering for sale and/or selling Counterfeit NFL Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

17. Counterfeiters "routinely use false or inaccurate names and addresses when registering with these Internet platforms," that do not require sellers to verify their identities. **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39.

13

Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

18.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit NFL Products to residents of Illinois.

19.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales of Counterfeit NFL Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers, including, in many instances, by copying the layouts, terms of service, legal notices and/or contact information found on the websites of Plaintiff's authorized online retailers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the NFL Trademarks, and none of the Defendants are authorized retailers of Genuine NFL Products.

20.     Many Defendants also deceive unknowing consumers by using one or more NFL Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Genuine NFL Products.  Other e-commerce stores operating under Seller Aliases omit using NFL Trademarks in the item title to evade enforcement efforts while using

strategic item titles and descriptions that will trigger their listings when consumers are searching for Genuine NFL Products. On information and belief, those Defendants that do not use NFL Trademarks in searchable text do so in an effort to avoid detection of their Counterfeit NFL Products.

21.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent one from learning their true identities and the scope of their e-commerce operation.

22.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit NFL Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit NFL Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another,

suggesting that the Counterfeit NFL Products were manufactured by and come from a common source and that Defendants are interrelated.

24.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit NFL Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use one or more NFL Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of the Counterfeit NFL Products into the United States and Illinois over the Internet.

27.     Defendants' unauthorized use of one or more NFL Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit NFL Products, including

into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28.    Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit or infringing imitations of one or more NFL Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. NFL Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Genuine NFL Products sold or marketed under the NFL Trademarks.

30.    Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit or infringing reproductions of one or more NFL Trademarks without Plaintiff's permission or consent.

31.    Plaintiff is the owner of the NFL Trademarks. The U.S. Registrations for NFL Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the NFL Trademarks, and are willfully infringing and intentionally using counterfeits or infringements of one or more NFL Trademarks. Defendants' willful, intentional and unauthorized use of one or more NFL Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit or infringing goods among the general public.

32.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known NFL Trademarks.

34.     The injuries and damages sustained by Plaintiff have been directly and/or proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of the Counterfeit NFL Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

35.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     Defendants' promotion, marketing, offering for sale, and/or sale of the Counterfeit NFL Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' Counterfeit NFL Products by Plaintiff.

37.     By using one or more NFL Trademarks on the Counterfeit NFL Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit NFL Products.

38.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit NFL Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

18

39.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff and its NFL Trademarks.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using any the NFL Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a Genuine NFL Product or is not authorized by Plaintiff to be sold in connection with NFL Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any products as Genuine NFL Products or any other products produced by Plaintiff that are not Plaintiff's, or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the NFL Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit NFL Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the NFL Trademarks and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the NFL Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, at Plaintiff's choosing, the registrant of the Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using NFL Trademarks;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement

of the NFL Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the NFL Trademarks;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 27th day of October 2021.          Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
jchristensen@gbc.law

*Attorneys for Plaintiff NFL Properties LLC*